**Cesar MORALES, Appellant,**

v.

**Linda LEE, Appellee.**

**No. 04–82–00542–CV.**

Court of Appeals of Texas, San Antonio.

March 28, 1984.

Hector Leal, Leal & Vela, Laredo, for appellant.

Julio Garcia, Laredo, for appellee.

Before CADENA, C.J., and REEVES and TIJERINA, JJ.

## OPINION

CADENA, Chief Justice.

Defendant, Dr. Cesar Morales, appeals from a judgment following trial to a jury, granting actual damages and exemplary damages to the plaintiff, Linda Lee, for alleged false imprisonment by the defendant. The jury awarded $10,000.00 actual damages and $10,000.00 exemplary damages to the plaintiff, and judgment was

entered in that amount. On the same day the judgment was entered, the court in a letter to counsel for the parties stated: "The Court is also of the opinion that a remittitur would be appropriate in this case and that a Motion for New Trial should not be granted conditioned upon the Plaintiff filing an appropriate remittitur." Five thousand dollars ($5,000.00) was remitted to the defendant, and defendant's motion for new trial was overruled.

Plaintiff was a part-time employee in Dr. Morales' office, usually working five hours per day as a medical assistant, while attending morning classes at Laredo Junior College. The incident of which plaintiff complained occurred in Dr. Morales' medical office on April 14, 1978, the day on which she was fired.

At 6:00 p.m. on April 14, 1978, soon after the doctor came to the office, Linda Lee was called into Dr. Morales' private office, in the presence of a co-worker Mrs. Lydia Martinez, and the doctor's son, Guillermo. Five dollars was missing: he asked her if she took the money. She replied "no." By her testimony, the doctor then "got mad ... just went crazy.... He got all mad and he had a chart in his hand and he slammed the chart down on the desk ... he was screaming and hollering and he was cussing at me and he was threatening me. He told me 'don't leave.' He said, 'If you leave, I'll call the police and the police will be here in a minute.'" Later she testified: "I was scared of him, I thought he was going to hit me." When asked whether she was subsequently allowed to leave the office, she answered "yes. When the doctor said—I guess after he decided to let me go, he said, 'get the hell out of here. I don't want to see you any more.'" The plaintiff then left the doctor's private office, but waited outside in the waiting room to get her paycheck before going home. A co-worker testified that she was shaking and crying, and couldn't talk after the incident. Linda Lee testified that she couldn't sleep at night, that she had nightmares, couldn't eat, and would throw up afterwards. She stated that she consulted a doctor for these problems, and that she

was out of work for five or six months afterwards because she was upset, confused, and unable to work. Linda's mother testified that her daughter had been in excellent health prior to this incident, but afterwards was depressed, unable to sleep at night, unable to eat, and lost twenty pounds.

We agree that there is no evidence supporting a finding of false imprisonment.

■ False imprisonment consists of a willful detention of another without his consent without legal justification. *Moore's, Inc. v. Garcia,* 604 S.W.2d 261 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *J.C. Penney Co. v. Duran,* 479 S.W.2d 374 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

■ Under a no evidence point we consider only the evidence and inferences tending to support the jury finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

■ Considering only the evidence favorable to the verdict, it seems clear that no false imprisonment occurred on April 19, 1978. Threats of future action, such as to call the police and have the plaintiff arrested, are not ordinarily sufficient in themselves to effect an unlawful imprisonment. W. PROSSER, TORTS § 11. The Texas cases allowing false imprisonment to be found where there were threats to call police, were such that the offense of false imprisonment could be established from other events occurring at the same time, such as extended interrogation and intimidation. *Compare, Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.) (employee told that if she did not sign a confession, she would never be allowed to leave, and would be sent to the penitentiary) with *Safeway Stores, Inc. v. Amburn,* 388 S.W.2d 443 (Tex.Civ.App.—Fort Worth 1965, no writ) (threat of imprisonment made, but not false imprisonment where there was no force or threat of force).

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing.

TIJERINA, Justice, dissenting.

I respectfully dissent. Civil false imprisonment has been defined as the direct restraint by one person of the physical liberty of another without adequate legal justification. The essential elements of false imprisonment are: (1) a willful detention of the person, (2) a detention without authority of law and (3) a detention against the consent of the party detained. *J.C. Penny Co. v. Duran,* 479 S.W.2d 374, 379 (Tex. Civ.App.—San Antonio 1972, writ ref'd n.r. e.). "An unlawful detention occurs when there is used any means that restrains another from moving from one place to another, and an actual arrest, assault, or incarceration is not necessary. *A wrongful detention may be effected by acts alone or by words alone,* or by both operating together, if the effect thereof is to operate on the will of the individual so as to prevent his free motion." 25 TEX.JUR.2d *False Imprisonment* § 18 (1961); *See Harris & Co. v. Caldwell,* 276 S.W. 298, 299 (Tex.Civ. App.—Dallas 1925, err. dism'd). (Emphasis added.)

The majority is correct in saying that a threat to call the police, standing alone, is not sufficient to conclude that the complainant was unlawfully detained. But, the jury, as the fact finder, heard, observed and weighed all the other factors such as the age, sex, relative size of the parties, demeanor of the witnesses, employer-employee relationship, and susceptibility of the complainant to intimidation. Appellee testified that appellant was mad, that he slammed the chart down on the desk, was hollering and cussing and that she was scared. Consequently, there was an unlawful detention when these facts are coupled with appellant's statement "If you leave, I'll call the police." The length of the detention is irrelevant and not in issue since appellee was detained from her freedom of movement. It is settled that the imprisonment need not be for more than an appreciable length of time and that it is not necessary that any damage result from it other than the confinement itself, since the tort is complete with even a brief restraint of the plaintiff's freedom. PROSSER,

TORTS § 11 at 43 (4th ed. 1971). Thus, in the instant case, the jury could have found or reasonably inferred that the angry outburst of hollering and threats by appellant was calculated to operate upon the mind of appellee and inspire fear of injury to her person. The jury could have also considered the other factors in determining that the threat was sufficient to intimidate and prevent appellant from her freedom of movement. The determination of the basic fact questions concerning intimidation and detention of appellant was based upon the appearance and demeanor of the witnesses and the weight and credibility to be given their testimony. The jury apparently rejected the testimony of appellant and his witnesses and found that appellant had willfully detained the appellee without justification. We should not substitute our judgment for that of the jury. *See Blount v. Earhart*, 657 S.W.2d 898, 902 (Tex.App. —Tyler 1983, no writ); *Szmalec v. Madro*, 650 S.W.2d 514, 517 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Martin v. Warren & Miller Co.*, 639 S.W.2d 706, 709 (Tex.App.—Tyler 1982, no writ).

I, therefore would affirm, holding that the record evidence is factually and legally sufficient to support the jury's findings and judgment.